(64 South. 901.)

No. 19,854.

WALLACE et al. v. KOSTER.

(March 16, 1914. Rehearing Denied April 13, 1914.)

*(Syllabus by the Court.)*

MASTER AND SERVANT (§ 278*) — DEATH OF SERVANT — NEGLIGENCE — SUFFICIENCY OF EVIDENCE.

Only questions of fact are involved in this case.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

Appeal from First Judicial District Court, Parish of Caddo; E. W. Sutherlin, Judge.

Action by John Wallace and others against Jan Koster. From a judgment for plaintiffs, defendant appeals. Reversed and dismissed.

Thatcher & Welsh and Blanchard & Smith, all of Shreveport, for appellant. G. W. Hardy and J. M. Foster, all of Shreveport, for appellees.

SOMMERVILLE, J. Plaintiffs, parents of Harris Wallace, sue defendant for damages for injuries and suffering caused them by the alleged negligence of defendant and his agents, for whom he is responsible. They allege that their son, Harris Wallace, aged twenty years, was in the employ of defendant to assist in its oil operations in the parish of Caddo; that he was killed while he was employed in assisting in cleaning out and drilling deeper a well belonging to defendant; that their son was standing on a derrick stool, in the act of pulling down slack in the cable, which was attached to the walking beam, when he fell from the derrick stool and was killed. They allege that the accident · happened through negligence on the part of defendant, consisting in his failure to have the derrick stool properly and safely constructed, and in having the walking beam so high that, in order to reach the cable attached to it, it was necessary to get on top of the derrick stool, which made the work of deceased unnecessarily dangerous. They further allege that the oil rig was not built in a proper and safe manner, and especially in that the main sill was on top of another sill, instead of being under the floor of the derrick, and that the general construction of the derrick was faulty. They allege that their son suffered intense pain before his death on the day following the accident, and that they are entitled to recover such damages as their son might have recovered had he lived, and, in addition, that which they have suffered by reason of his death, and the mental anguish and suffering caused them. They ask for judgment in the sum of $15,000.

Defendant answered that Harris Wallace at the time of his injury was in the performance of his usual and customary duties, as helper, with which he was familiar; that he was subjected to no greater risk, danger, or hazard than were usual and incident to such employment; and that the risk, danger, and hazard were obvious, and assumed by him in the course of his employment. Defendant further denies negligence or carelessness on his part, or on the part of his agent or employé.

There was trial by jury, and a verdict was rendered in favor of plaintiffs for $8,000. Defendant has appealed, and plaintiffs have answered the appeal, and asked for an increase in the judgment to $15,000.

There is no dispute as to when Harris Wallace met his death, or that he fell from the derrick stool on which he was standing at the time he was killed. There are only questions of fact presented in the record, and they are as to whether the rig and derrick erected by defendant were properly constructed, and whether the derrick stool used by the deceased was a proper instrument or tool with which or upon which to do the work which was assigned to him.

Plaintiffs allege negligence on the part of defendant in having the main sill of the derrick placed on top of other sills, and some 6 inches above the floor, instead of being under the floor, and that the placing of said main sill in such position caused the walking beam to be so high that, in order to reach the cable attached to it, which the deceased was about to pull, or was actually engaged in pulling, down at the time of the accident, it was necessary for him to ascend to the top of the derrick stool, and that these conditions rendered his position and work unnecessarily dangerous.

There is much evidence in the record going to show that the main sill complained of by plaintiffs is ordinarily placed under the floor of an oil rig and derrick, but that it is not always so placed; and, after a careful reading of all the evidence, we have come to the conclusion that the construction of defendant's derrick was not faulty or unsafe. Doubtless a better arrangement would have been to place the main sill under the derrick floor; but, even if the construction of the derrick should be considered faulty and unsafe, that condition was not the proximate cause of the death of Harris Wallace. He did not fall over the sill, and it is not clear that his head struck the sill when he fell. From the testimony, we have concluded that his head struck the floor, and that the blow resulted in his death.

The walking beam may have been inconveniently high; but the driller and the deceased had been pulling the cable from it in safety for several weeks and months, and without complaining to defendant's foreman. But it does not clearly appear that the deceased was pulling on the cable at the time of the accident. The height of the walking beam was not the proximate cause of Wallace's falling.

The allegation that the derrick stool on which deceased was standing at the time of the accident was not properly and safely constructed has not been proved. The stool was exhibited in court, and, while it was in an unsafe condition at that time, the evidence clearly shows that it was in good order and repair at the time of the accident. The principal fault alleged against the stool is that it is about $14\frac{1}{4}$ inches higher than the stool usually used in rigs like the one owned by defendant. The stool had been used for a long time, first at one rig owned by defendant, and then at another. Harris Wallace, together with the man who was in the crew with him in the employ of defendant, had used that stool for some time; there had been no complaint made by Wallace to defendant, or to the foreman of the latter, about the stool being unsteady or unsatisfactory. It had been built by a rig builder and contractor, who had formerly been in the employ of defendant, for use at another well owned by defendant. It further appears from the evidence that it is the privilege and the duty of the driller to make the derrick stool upon which he and his helper work. Mr. Essner, the driller, and Mr. Wallace, helper, had the right to provide, at the expense of defendant, any size or shaped stool that might prove most convenient for their work.

The evidence does not show affirmatively that the height of the stool had anything to do with the accident complained of. Mr. Essner, in a signed statement at or about the time of the accident, says that the deceased had taken his position on the top of the stool preparatory—

"to pull the slack in the cable so that we could run the drill. He took hold of the cable, and, while in his effort to pull the slack, the stool rocked to one side, but did not fall over. That caused him to lose his balance and fall, striking his forehead on the floor, and perhaps his head struck the main sill, which is about 6 inches above the floor, and perhaps 16 inches wide. * * * This stool was in good order and sound and strong, and is the kind used for such purpose. I had been on this stool fixing the grip

on the cable just before Wallace was hurt. The stool did not break or fall over, but simply careened to one side a little, and one end of it may have slipped off the inch board (at the hole) on which the stool rested. The boards and floor of the derrick were wet and slippery, as they usually are.

"I cannot account for his falling as he did, unless he may have been twisting the crossbar around, and possibly missed his hold on the cable. I was at the wheel giving him the slack, and saw him just as he started to fall. Everything about the rig was in good shape and condition, and was such equipment as is generally used. There was the usual amount of help and equipment and all that was needed. No one was to blame in the least for the accident to Wallace. It was just an accident that could not be foreseen or avoided. * * * Wallace was in the discharge of his usual duties when hurt, having done this same thing many times a day, using the same stool for several weeks. This is one of the helper's duties."

The evidence does not show clearly whether Wallace was engaged in pulling slack out of the cable at the time of the accident, or whether he was preparing to do so. We are inclined to believe that he was getting ready to pull the slack, and that he did not have the cable in his grasp, for he fell in the opposite direction from that in which he would have fallen if he had been pulling on the cable; and, if he had had a firm grasp on the cable, he would not have fallen, for the stool on which he was standing did not topple over. Mr. Essner, the driller, was the only witness to the accident, and he does not attempt to explain the cause of the deceased falling in the direction he fell. The height of the stool was not the cause of it.

Mr. Essner appeared as a witness for plaintiffs on the trial of the cause, and denies much of that which he had stated in the written statement quoted from above. But his testimony is weak and vacillating; it is contradictory and unsatisfactory; his answers to the counsel for plaintiffs were direct, and to the point, while many questions by defendant's counsel were misunderstood, or not heard, or were answered by saying that he did not remember anything about the matter. He denied remembering Mr. P. M. Welsh, to whom he made the statement at the time of the accident, and which statement he signed. His testimony is unreliable, and it serves to weaken the plaintiffs' case. As Essner was the only witness to the accident which resulted in the death of Harris Wallace, and his testimony cannot be accepted, and as the evidence for defendant shows that the standard rig used by him for drilling oil wells was commonly used in the oil fields, and that it was reasonably safe, there will be judgment for defendant.

It is therefore ordered, adjudged, and decreed that the judgment and verdict appealed from be annulled, avoided, and reversed, and that there be judgment in favor of defendant and against plaintiffs, dismissing their suit, at their costs.

PROVOSTY, J., absent on account of illness, takes no part.